# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL A. FERGUSON,

        Petitioner,

v.

                                  Case No. 10-C-956

RANDALL HEPP,

        Respondent.

## DECISION AND ORDER

Michael Ferguson is currently serving a sentence for stalking, attempted first-degree intentional homicide, and escape. He is currently incarcerated at the Jackson Correctional Institution. After exhausting his state court remedies, Ferguson timely filed this petition on October 26, 2010, under 28 U.S.C. § 2254. The Court gave Ferguson leave to proceed in an order, Docket 2, on October 27, 2010. The case is now before me for resolution.

## BACKGROUND

The basic facts of the case are not disputed. Ferguson had an on-again, off-again relationship with Amy Johns and has a son with her. They were living together until January of 2006. On January 30, 2006, Johns took a car to apply for a job. They had both used the car in the past. Ferguson called Johns and told her if she did not return the car in a half hour, he would take their son to Minnesota and she would not see him again; later, he told her he would kill the son. Shortly after Johns moved out, Ferguson accosted her father in the parking lot of her new apartment,

threatening to kill him, Johns, and Johns' daughter. He also threatened to blow up Johns' father's car. Johns obtained a domestic abuse injunction against Ferguson in 2006.

Between March 1 and March 15, 2006, Ferguson made up to 609 calls to Johns' cell phone. On one day alone he made 193 calls. After March 16, when Johns changed her cell phone number and obtained a land line, Ferguson started making threatening and harassing phone calls to her father, with threats to kill Johns and her father and to burn the house and blow up the car. Despite the domestic abuse injunction, on March 18, 2006, Ferguson approached Johns at a Wal-Mart. Johns asked the store to call the police and Ferguson left before they arrived.

In the early morning of March 21, 2006, Johns awoke; she tried to turn on the lights but discovered her apartment had no power. Someone was pounding on her door; she called 911 on her cell phone since her land line was dead. Police officers arrived and found Ferguson near Johns' apartment, holding a knife. The officers ordered Ferguson to drop the knife; he instead stabbed himself in the chest several times. Ferguson remained standing despite his wounds. One of the officers tried to subdue him with a Taser, but this attempt was unsuccessful. The officer ordered Ferguson to get on the ground, but Ferguson did not comply. The officer then struck Ferguson with his baton, eventually striking him down. Ferguson was arrested and taken to the hospital. Police recovered a mostly illegible note from Ferguson's pocket that read "dear Amy, you got yours with –"; the rest of the note could not be read. (ECF 10, Ex. H.)

In the subsequent investigation, police discovered the electrical switch to Johns' apartment had been turned off and the telephone line at the junction box had been cut. Police also discovered someone had broken into Johns' storage unit, in which they discovered a twelve pack of beer, empty beer bottles, cigarette butts, a slashed twin mattress that had belonged to Johns, and a knife with a

four-inch blade. Police also discovered that between 4:16 a.m. and 4:59 a.m., Ferguson made twenty-one phone calls to Johns' father in Michigan, with threats such as "Prepare your daughter's funeral" and "you will be buying her casket." (*Id.*, Ex. E.)

As outlined above, the overall theme of the evidence at trial was Ferguson's increasing agitation and violence after Johns moved out of their residence. Based on this evidence, the jury found Ferguson guilty of one count of attempted first-degree intentional homicide.[1]

## ANALYSIS

Ferguson asserts only one claim: that the evidence presented at trial was insufficient to sustain the jury's verdict of guilt beyond a reasonable doubt. Specifically, Ferguson claims:

> The state did not prove that [he] had the requisite intent in attempting first-degree intentional homicide. The state did not prove that [he] was aware that his conduct was practically certain to cause death to anyone. The state did not prove that [he] intended to commit a homicide on March 21, 2006, because his conduct on that night was not practically certain to cause another person's death.

(Pet. ¶ 22A.)

Ferguson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376–77

---

[1] Ferguson was also convicted of felony stalking and escape, but he does not challenge any of his convictions other than that of attempted first-degree intentional homicide.

3

(2000). The petitioner bears the burden of proving that the state courts' application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

Any sufficiency of the evidence challenge involves significant deference to the jury's verdict, and the conviction may not be overturned unless no rational jury could have found all of the essential elements of the crime. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making such a determination, the reviewing court views the evidence in the light most favorable to the prosecution. *Id.*

On federal habeas review, the level of deference is arguably even stronger. The question is not left to this Court's independent judgment to determine whether the jury got it right. Instead, the question is "whether the Wisconsin Court of Appeals' decision . . . that a rational jury could have convicted [the defendant] based on this record resulted from an objectively unreasonable application of *Jackson*." *Piaskowski v. Bett*, 256 F.3d 687, 691 (7th Cir. 2001).

Ferguson argues that the evidence was insufficient and that his conviction was based upon an unreadable, misquoted letter. (Pet. Resp. at 3.) Ferguson alleges that properly translated, this letter indicates he was trying to commit suicide rather than murder Johns. He contends the note addressed to Johns would make no sense if he was planning on killing Johns because she would not have been able to read it. While some of the logical steps in his response are unclear, Ferguson seems to argue that without this letter, there was no evidence that he actually tried to commit murder, since he was not at Johns' apartment door or actually threatening her at the time the police arrived; consequently he suggests that properly construed, the letter negates the fact that it "was not

4

too late to turn back." (*Id.* at 3–4; *see also* the Wisconsin Court of Appeals' construction of his claim, ECF 1, Ex. 1 at 3.)

While some of Ferguson's assertions — for example, that it would make no sense to leave a note for a dead person — are not entirely without merit, at best these pieces of evidence were a mere fraction of the case presented against Ferguson at trial. In the words of the Wisconsin Court of Appeals, "We need not concern ourselves with evidence which might suggest an alternative inference or theory of defense. We need only decide whether the theory accepted by the jury was supported by sufficient evidence to sustain the verdict rendered." (ECF 10, Ex. E ¶ 14); *see also State v. Poellinger*, 153 Wis. 2d 493, 507 (1990) (noting Wisconsin appellate courts must adopt any reasonable inference that supports the verdict). At best, the meaning of the note is equivocal. In fact, it appears that Ferguson did not complete the note and thus it may reflect an earlier plan that he abandoned before he went to Johns' apartment in the early morning hours of March 21. Even assuming, arguendo, Ferguson is correct regarding the improper translation and interpretation of the note, it is obviously still within the bounds of reasonableness for a jury to discern his intent from the other evidence presented.

The fact that the letter may have been a suicide note is favorable to Ferguson only if one assumes he was acting rationally, which he clearly was not. It does not somehow undermine the rationality of the jury's conclusion based on the totality of evidence. In Ferguson's view, under these facts, a criminal defendant carrying a suicide note at an alleged crime scene would be entitled to a presumption of lack of intent to kill, but that is not what the law requires, particularly in light of the tremendous weight of the evidence to the contrary. The jury cannot be faulted for taking Ferguson at his word that he intended to kill Johns, especially when he repeated his threat to do so

numerous times, cut the electrical power and phone line to her apartment, tried to gain entry to her room during the early morning hours, and then is apprehended with a knife less than ten feet from her door after the police are called. Accordingly, viewing the facts in the light most favorable to the prosecution, it is not difficult to conclude that the court of appeals correctly applied *Jackson* in denying relief on this claim.

**CONCLUSION**

For the reasons given above, I conclude the state courts' resolution of the issues presented did not involve an unreasonable application of any controlling Supreme Court precedent, nor did it involve an unreasonable determination of any facts. 28 U.S.C. § 2254(d). The petition is **DENIED** and the case **DISMISSED**. The clerk is directed to enter judgment in favor of Respondent.

Dated this   25th   day of August, 2011.

                                            s/ William C. Griesbach
                                            William C. Griesbach
                                            United States District Judge